IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
03 SEP 22 AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

LATANYA BRITTON,              )
                              )
     Plaintiff,               )
                              )   CIVIL ACTION NO.
v.                            )   01-AR-3324-S
                              )
EZPAWN, INC., et al.,         )
                              )
     Defendants.              )
                              )
                              )

ENTERED
SEP 22 2003

## MEMORANDUM OPINION

Before this court are two motions filed by defendants, EZCorp, Inc., EZPawn of Alabama, Inc., and EZPawn, Inc. (collectively "EZPawn"). On April 11, 2003, EZPawn filed a motion for summary judgment. On May 22, 2003, EZPawn filed a motion to strike portions of the affidavit of plaintiff, Latanya Britton ("Britton"), submitted with her response to EZPawn's motion for summary judgment.

Britton, a former employee of EZPawn, contends that she was terminated as a sales person and lending representative in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), and in violation of the Family and Medical Leave Act of 1993 ("FMLA"). Britton makes four claims: (1) a Title VII disparate treatment claim, (2) a Title VII wrongful termination claim, (3) a FMLA interference claim, and (4) a FMLA retaliation claim.

1

56

## Statement of Undisputed Facts

Britton began her employment with EZPawn as a sales person and lending representative on August 1, 1999. On August 4, 1999, she received a copy of EZPawn's employee handbook. The handbook, in the section entitled "Family and Medical Leave of Absence," provided that EZPawn can be required to give an employee up to 12 weeks of unpaid leave. On August 4, 1999, Britton acknowledged, in writing, her receipt of the Handbook. Two weeks after beginning her employment, Britton was transferred to the EZPawn store located on Bessemer Road in Five Points West in Birmingham, Alabama. Debbie Luster ("Luster") was the store manager and was Britton's supervisor.

In early 2000, Britton became pregnant. On August 16, 2000, she saw a physician and complained of pregnancy complications. The physician wrote Britton a note stating that she should go on leave immediately. On the same day, Britton delivered the note to Luster who also told her that she should begin her leave immediately. On September 25, 2000, while on leave she applied for unemployment compensation with the Alabama Department of Industrial Relations. Britton gave birth to twins on October 13, 2000. She was released from the hospital on October 16, 2000, but was prescribed bed rest until her follow up doctor's visit on November 21, 2000. During the follow up visit, her doctor told

her that she could not return to work because she was still swollen from the birth of her twins. Britton then contacted Luster and informed her that she was unable to return to work. On November 27, 2000, Britton again applied for unemployment compensation with the Alabama Department of Industrial Relations. On December 16, 2000, Britton received a letter from Dianne McCarty ("McCarty"), Corporate Human Resources Manager for EZPawn. The letter stated that "as of December 7, 2000 [Britton's] employment ended with [EZPawn] due to a voluntary termination recognized as job abandonment." McCarty's letter cited Britton's failure to maintain contact with her immediate supervisor[1] and not returning to work as the reasons for the termination. On December 7, 2000 approximately 16 weeks had passed since Britton first took her leave on August 16, 2000. On January 8, 2001, Britton received a release from her physician stating that she was able to return to work on January 9, 2001.

## Analysis

### Title VII Claims

Britton asserts two claims under Title VII: disparate treatment and wrongful termination. The court is unable to

---

[1] There is a dispute between the parties as to whether Britton actually failed to stay in contact with Luster. However, this court does not need to resolve that dispute in order to reach its decision.

distinguish the two. They are same, because the act of disparate treatment of which plaintiff complains is her termination. This court will first examine the disparate treatment claim, while understanding that it is examining the so-called wrongful termination claim simultaneously. Title VII prohibits employers from refusing to hire, from discharging, or from otherwise discriminating against employees on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As noted, Britton complains of her discharge as the act of discrimination. Discrimination because of or on the basis of sex includes discrimination based on pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k).

Gender discrimination in a disparate treatment claim can be established by a plaintiff's offering direct evidence of such discrimination, statistical proof of a pattern of discrimination, or circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "'[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [gender]' will constitute direct evidence of discrimination." *Damon v. Fleming Supermrkts*.

4

of Fla., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999) (quoting Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990)).

Under the *McDonnell Douglas* framework, plaintiff must prove a prima facie case of gender discrimination by a preponderance of the evidence. *McDonnell Douglas,* 411 U.S. at 802; *Texas Dep't of Community Affs. v. Burdine*, 450 U.S. 248, 253 (1981). The burden of production then shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802; *Burdine,* 450 U.S. at 254. Plaintiff is then given the opportunity for rebuttal to show by a preponderance of the evidence that the articulated reason offered by defendant is pretextual. *McDonnell Douglas*, 411 U.S. at 804; *Burdine,* 450 U.S. at 256. Throughout this analytical framework, plaintiff retains the ultimate burden of persuasion that she has been the victim of intentional discrimination. See *Burdine*, 450 U.S. at 253.

To establish a prima facie case of pregnancy discrimination, a plaintiff must make the following showing: "(1) she is a member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment;..." and (4) her employer treated similarly situated non-pregnant employees more favorably. *Spivey,* 196 F.3d at 1312; see *McDonnell Douglas*, 411 U.S. at 802.

5

Britton provides no direct evidence of discrimination. Therefore, her claim must be analyzed under the *McDonnell Douglas* burden-shifting framework. As noted above, Britton must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253. EZPawn admits that Britton meets the first two parts of the test, but argues that she was not treated less favorably than similarly situated employees and that she did not suffer an adverse employment action.

With regard to similarly situated employees, plaintiff must demonstrate that similarly situated non-pregnant employees were treated more favorably than she was treated. The plaintiff and the non-pregnant employees must be similar in "all relevant respects...In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). If misconduct is an articulated reason for the adverse employment decision, the quantity and quality of the similarly situated employees' misconduct must be "nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.

6

1999)(citations omitted). If plaintiff fails to identify similarly situated non-pregnant employees who were treated more favorably, "her case must fail because it is on her to establish her prima facie case." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)(citing *McDonnell Douglas*, 411 U.S. at 802; *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989)).

In her second amended complaint Britton gives two examples of allegedly similarly situated non-pregnant employees who were treated more favorably than she. First, she peculiarly uses herself as an example. Britton argues that in September 1999 she had to take approximately three months of leave because of a broken finger. EZPawn took no adverse employment actions as a result. However, in her deposition Britton modified the amount of leave to two and a half months. Britton said she was on leave from September 1, 1999 through mid-November 1999 (Britton Dep. at 42-3). A total of less than 12 weeks of leave. This conduct is not "nearly identical" to the conduct at issue in this case. *See Maniccia*, 171 F.3d at 1368. Britton was fired in the present case after 16 weeks of leave. The employee handbook states that company policy only allows 12 weeks of leave.

Britton's second example of an allegedly similarly situated employee is Luster. In her second amended complaint Britton argues that Luster took leave for several months for a non-

pregnancy related reason. Later, in her response to the present motion, Britton changes the amount of time from several months to four weeks. In Luster's affidavit, submitted with Britton's response to this motion, Luster also says she was only absent from work for four weeks. Again, such conduct is not "nearly identical" to the conduct at issue in this case. *See Maniccia*, 171 F.3d at 1368. It is undisputed that Britton took 16 weeks of leave while company policy only allows for 12. Luster took 4 weeks of leave. For the purposes of establishing a prima facie case, Luster is not a similarly situated non-pregnant employee.

Britton provides no other examples of similarly situated non-pregnant employees. The Eleventh Circuit has held that the Pregnancy Discrimination Act "is not violated by an employer who fires an employee for excessive absences, even if those absences were the result of the pregnancy, unless the employer overlooks the comparable absences of non-pregnant employees." *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000)(per curiam)(citations omitted). Because plaintiff has not established a prima facie case of gender discrimination, defendants' motion for summary judgment on the Title VII disparate treatment claim is due to be granted.[2]

---

[2]This court need not consider EZPawn's argument that Britton did not suffer an adverse employment action, for it is clear that she did not show that she was treated less favorably than other similarly situated employees. Consequently, regardless of whether or not Britton suffered an adverse employment action, she

Turning to Britton's separate Title VII wrongful termination claim, this court can see no reason why the analysis and, therefore, the result should be any different. This court can discern no basis for Britton's asserting a distinct claim for wrongful termination. Britton provides nothing to support a differentiation between her two claims. The allegations in her second amended complaint in support of the wrongful termination claim are identical to the allegations made in support of the disparate treatment claim. Although asserted as two claims, they are one claim. Therefore, the analysis of the disparate treatment claim suffices for the wrongful termination claim. Summary judgment is due to be granted on the wrongful termination claim as it is on the disparate treatment claim.

## FMLA Claims

The FMLA guarantees qualifying employees 12 weeks of leave each year for a variety of reasons. 29 U.S.C. § 2612(a)(1). Among the reasons qualifying employees are guaranteed leave are "[b]ecause of the birth of a son or daughter..." and "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(A),(D). In addition, following such leave, employees are entitled to either be restored to their position prior to taking FMLA leave or to be restored to an equivalent position.

---

has not established a prima facie case of discrimination.

*Id.* § 2614(a)(1)(A)-(B). The FMLA creates two types of claims so that these rights can be enforced: interference claims and retaliation claims. *Strickland v. Water Works and Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir 2001). In order to "state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that [she] was entitled to the benefit denied." *Id.* at 1206-07 (citing *O'Connor v. PCA Fam. Health Plan, Inc.,* 200 F.3d 1349, 1353-54 (11th Cir. 2000) and *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir. 1999)). On the other hand, in order to state a retaliation claim, "an employee must demonstrate that [her] employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." *Strickland,* 239 F.3d at 1207 (citing *King,* 166 F.3d at 891).

In support of her interference claim, Britton makes three contentions in her second amended complaint. First, she alleges that when she began her leave on August 16, 2000, EZPawn told her that she could not take leave under the FMLA. Second, Britton argues that EZPawn failed to give her adequate notice of her FMLA rights both at the time of her hiring and at the time she took her leave. Third, Britton argues that EZPawn violated her FMLA rights when it failed to restore her to the same or an equivalent position at the end of her leave.

With regard to her first argument, Britton alleges in her second amended complaint that she was told that she could not take FMLA leave. However, this allegation is not supported anywhere in the record. In fact, Britton's deposition indicates that FMLA leave was never mentioned by her or by her employer at the time she took her leave. (Britton Dep. at 52-53).

Second, Britton argues that EZPawn failed to give her adequate notice and explanation of her FMLA rights in the employee handbook at the time of her hiring. Britton also argues that she was not given any notice or explanation of her FMLA rights at the time she began her leave. She accurately points out that under the regulations adopted by the Secretary of Labor, as authorized by the FMLA, adequate notice must be given in both instances. *See* 29 U.S.C. § 2654; 29 C.F.R. § 825.301(a)(1)(requiring employers that provide employee handbooks to include an explanation of FMLA entitlements and obligations in the handbook); 29 C.F.R. § 825.301(b)(1) (requiring detailed notice of FMLA rights by employers when employees seek leave). Even if EZPawn's notice was inadequate both at the time of Britton's hiring and when she requested leave, allowing Britton's claim to go forward based on the two violations would be elevating form over substance. *See Dodgens v. Kent Mfg. Co.*, 955 F.Supp. 560 (D.S.C. 1997).

In *Dodgens*, the plaintiff, Eddie Forest Dodgens ("Dodgens"),

11

an employee of the defendant, Kent Manufacturing Company ("Kent"), took six weeks of medical leave while employed with Kent. *Id.* at 563. Kent did not inform Dodgens of his FMLA benefits and obligations either in the employee handbook or at the time Dodgens requested leave. *Id.* at 564. Shortly after his return to work, Dodgens was terminated. *Id.* at 563. Dodgens argued that Kent interfered with his FMLA rights by not providing notice and explanation as required by the FMLA regulations. *Id.* at 564. In response to this claim the *Dodgens* court reasoned:

> Kent has clearly violated the FMLA by failing to explain the FMLA benefits and leave rights to Dodgens in its employee handbook and at the time Dodgens requested leave. As 29 C.F.R. § 825.220(b) states, a violation of the FMLA constitutes interference with FMLA rights. In this case, however, the court would be elevating form over substance to permit this claim to go forward in light of the fact that Dodgens received all of the leave benefits that he was guaranteed pursuant to the FMLA.

*Id.* at 564-65. This court finds the reasoning in *Dodgens* persuasive.

Britton was afforded her entitlement to 12 weeks of leave under the FMLA. Allowing her interference claim to proceed on the grounds that she was not given proper notice would elevate form over substance. *See id.* Also, Britton neither argues, nor could she argue, that had she been given proper notice of her rights either in the handbook or at the time she took her leave, then she would have returned to work at an earlier time. It is

12

undisputed that Britton was not released to work until January 9, 2001.

As noted above, Britton's third argument under her interference claim is that she was not restored to the same or an equivalent position. It is undisputed that Britton received approximately 16 weeks of leave. EZPawn was not obligated to restore Britton to the same or an equivalent position, because Britton was absent from work for longer than the statutorily protected period. *See* 29 U.S.C. § 2612(a)(1). The FMLA only protects employees when they take 12 weeks of leave or less. *Id.*; *See Cox v. Autozone, Inc.*, 990 F.Supp. 1369, 1381 (M.D. Ala. 1998), *aff'd sub nom. McGregor v. Autozone, Inc.*, 180 F.3d 1305 (11th Cir. 1999)(arguing that the plaintiff had "no rights" under the FMLA because she admittedly took more than 12 weeks of leave). The court having rejected Britton's three arguments in support of her interference claim, defendants' motion for summary judgment is due to be granted on plaintiff's FMLA interference claim.

Britton also asserts a retaliation claim under the FMLA. As noted above, in order to state a retaliation claim "an employee must demonstrate that [her] employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207 (citing *King*, 166 F.3d at 891). In the absence of direct

13

evidence of the employer's intent, the same burden-shifting framework used in Title VII discrimination cases is used for an FMLA retaliation claim. *Strickland*, 239 F.3d at 1207; see *McDonnell Douglas*, 411 U.S. 792. Therefore, plaintiff must first establish a prima facie case. In order to state a retaliation claim under the FMLA the employee must allege: "(1) [she] engaged in a statutorily protected activity, (2) [she] suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Strickland*, 239 F.3d at 1207 (citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000)).

Britton cannot meet the first step of the test. It is undisputed that Britton took approximately 16 weeks of leave under the FMLA. As noted previously, the statutorily protected leave period under the FMLA is 12 weeks or less. 29 U.S.C. § 2612(a)(1). Britton did not engage in a statutorily protected activity. Consequently, Britton fails at the first step and cannot assert a FMLA retaliation claim. *See Cox*, 990 F.Supp. at 1381 (arguing that the plaintiff had "no rights" under the FMLA because she admittedly took more than 12 weeks of leave); *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784-85 (6th Cir. 1998). Because Britton cannot establish a prima facie case of retaliation, defendants' motion for summary judgment on the FMLA retaliation claim is due to be granted.

*Motion to Strike*

In its motion to strike, EZPawn argues that portions of Britton's affidavit submitted with her response to its motion for summary judgment are inconsistent with her prior sworn deposition and should be stricken. EZPawn also argues that Britton made self-serving, conclusory statements in her affidavit that should be stricken. Because the motion for summary judgment is being decided without reference to the statements in Britton's affidavit that are at issue, the motion to strike will be denied as moot.

**Conclusion**

By separate order, this court will grant EZPawn's motion for summary judgment as to all four of Britton's claims.

DONE this _22nd_ day of September, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE